THE PEOPLE OF THE STATE OF NEW YORK, RESPOND-
ENTS, *v.* DAN S. RICHARDS, APPELLANT.

*Criminal law — what acts constitute the crime of burglary in the third degree under sections 498 and 504 of the Penal Code—proof of acts of entry, with an intent to commit any other crime, justifies a conviction of burglary — express malice need not be shown — offense of removing a grave stone — power of the court to allow erroneous allegations in respect to anything or person to be corrected under sections 281, 293, 294, Code of Criminal Procedure — a decision upon a demurrer only bars a prosecution for the same offense — Code of Criminal Procedure, sec. 327 — when an administrator has no title to a vault or tablet.*

Upon the trial of the defendant on an indictment for burglary in the third degree evidence was given tending to show that the defendant broke the lock on the outer iron gate of a vault in a cemetery, unlocked the inner door with a key and entered the tomb; that he removed a tablet or stone in front of the place where the body of one Robert S. Phelps was buried, and in so doing broke it; that he then, with the use of a crow-bar, pried up and broke off the top of the coffin and broke the heavy cement and plaster covering the body, broke the end of the coffin and cut through the gum-mastic and lead encasement covering the body until the feet and limbs were exposed, a slipper and some of the clothing of the body being displaced and disturbed and one of the legs being punctured.

*Held,* that these facts justified the jury in finding the defendant guilty of burglary in the third degree, as that crime is defined in section 498 of the Penal Code, when read in connection with section 504 thereof, defining the meaning of the word "building" as used in the section first cited.

That it was not needful to a conviction that an intent to steal, or an intent to "commit any felony," should be shown, provided the intent to commit any other crime was averred and established.

When acts are prohibited by statute, and the evidence clearly shows that the defendant has done them, it is unnecessary for the jury to find that the defendant was actuated by express malice. It was enough to find that he was intentionally guilty of the acts.

That if the jury found that the defendant broke in with intent to remove "a grave-stone," and that the tablet or stone in the front of the coffin inscribed with the birth, date of death and name of the deceased, was "a grave-stone" or "monument," then they found that he broke in with intent to commit an act prohibited by section 8 of chapter 133 of 1847, as well as by section 647 of the Penal Code.

The indictment alleged that the vault, building, erection or inclosure broken into in the night-time by the defendant, was "the property of and owned by William G Phelps, Francis A. Phelps and Lizzie S. Phelps and others, to the grand jurors unknown, who are the heirs-at-law of and legatees and devisees under the will of Robert S. Phelps, deceased, said building, erection and inclosure being a part of the estate left by Robert S. Phelps, deceased." It appeared upon the trial that the three persons named in the indictment were not the heirs-at law of Robert S. Phelps, who built the vault, nor of his father, Sherman D. Phelps, to whom the lot was conveyed by the cemetery association, and who died seized thereof, and that Harriet Phelps and eleven other persons were his heirs-at-law.

*Held,* that the court did not err in denying a motion made by the defendant for his discharge on the ground of a variance between the allegations of ownership and the proof, or in granting a motion made by the district attorney to amend the indictment by striking therefrom the names of Francis A. Phelps, William G. Phelps and Lizzie S. Phelps, heirs-at-law and devisees of Robert S. Phelps, and inserting in the place thereof the names of Harriet Phelps and eleven others as owners of the property.

The defendant put in evidence a judgment-roll, filed upon a decision sustaining a demurrer interposed by him to an indictment charging him with "the crime of unlawful and willful injury to and destruction of real and personal property committed" as alleged in the indictment. The grounds of the demurrer were that charges of the commission of a felony and of a misdemeanor were joined in one count; that the facts stated did not constitute a crime for willfully injuring and destroying the personal property of another when the punishment was not specifically prescribed by statute, and that the personal property did not belong to the heirs-at-law or devisees of Robert S. Phelps, deceased.

*Held,* that as it was nowhere made to appear by the demurrer, decision or judgment-roll that the court held that the facts stated in the indictment did not

constitute a crime, the court did not err in refusing to hold that the judgment was a bar or in refusing to strike out "all the testimony which shows the commission of the acts charged."

That the father, and administrator of the wife of Robert S. Phelps, had no title to the vault or to the stone monument, slab or tablet, in front of the coffin of Robert S. Phelps, deceased, and had no authority, express or implied, to authorize or justify the defendant in committing the acts alleged in the indictment. *Regina* v. *Sharpe* (40 Eng. Law and Eq., 581); *Snyder* v. *Snyder* (60 How. Pr., 370) followed.

APPEAL from a judgment entered in Broome county upon a verdict of conviction, taken at the Oyer and Terminer in that county, of burglary in the third degree, committed in October, 1884, by breaking and entering the Phelps vault in Forest Cemetery, in the city of Binghamton.

Sherman D. Phelps, of the city of Binghamton, died in 1878, leaving two sons, Robert S. Phelps and Arthur D. Phelps, as his only heirs-at-law. Arthur D. Phelps died on the 21st day of October, 1880, leaving no wife or children. Robert S. Phelps died on the 14th day of December, 1881, leaving a wife, Hattie S. Phelps, a daughter of the defendant William E. Taylor. Robert S. Phelps left no children. In 1862 Sherman D. Phelps became the owner of a burial lot in the Spring Forest Cemetery, of the city of Binghamton. He took possession of it, made interments therein, and was the owner of it at the time of his death. Upon the trial evidence was given tending to establish that, in the summer of 1881, Robert S. Phelps caused to be erected upon said burial lot a building or family tomb for the interment of the dead. It was built of granite, wholly above ground, and contained twelve places for bodies. Upon the death of Robert S. Phelps, his wife made an agreement with Dr. Henry O. Ely to embalm the body of her husband. At the time of the funeral of Robert S. Phelps, the casket containing his body was placed temporarily in the vestibule of the tomb. It was in a few days removed to a building, where the process of embalming was performed by Dr. Ely. After the embalming was completed the body was dressed in an armour of sheet lead. The lead casing was immediately around the body over the clothes. The body was then placed in a wooden casket, made for that purpose. The space in the casket not taken up with the body and lead armour was filled with gum-mastic. On the top

of this gum-mastic was about five inches of cement, which, after cooling, became as hard as stone. The cover of the original casket was placed on and a lead encasement over and around everything for an outside covering, intending to make the place occupied by the body air-tight. The casket containing the body so pre-pared for preservation, was placed in one of the places in the Phelps tomb for its final resting place, and was there on the nights of October 22 and 23, 1884. A tablet or grave-stone containing the usual inscription was placed in front of the place where the body was buried. Hattie S. Phelps died October 25, 1882, and before Dr. Ely had been paid for his services in embalming the body of her husband. Her father, the defendant William E. Taylor, was appointed administrator of her estate. An action in the Supreme Court was brought by Dr. Henry O. Ely against William E. Taylor as administrator, etc., to recover for the value of his services in the embalming of the body. The trial of the action was begun at defendant Richards' office on the 17th day of July, 1884, and the plaintiff rested his case on the 3d day of September, 1884. It was then adjourned until the 6th day of November, 1884, when defend-ant began his side of the case. The defendant Dan S. Richards, assisted by Jerry McGuire, Esq., was William E. Taylor's attorney in said action. After the plaintiff had rested his case, the defendant and Dan S. Richards made preparations to see and examine the body of Robert Phelps, thinking that enough evidence could be produced to, in whole or in part, defeat the plaintiff's claim. During the time for which the case was adjourned, and on the nights of the twenty-second and twenty-third of October, the defendant Dan S. Richards went to Spring Forest Cemetery, broke the lock on the outer iron gate of the vault, unlocked the inner door with a key, and entered the tomb. He first attempted to remove the tablet or grave-stone in front of the body of Robert Phelps, and in so doing broke it. He then, with the use of a crow-bar, pried up and broke off the top of the coffin, and broke the heavy cement and plaster slab which covered the body, broke out the end of the coffin and chiseled and cut through the gum-mastic and lead encasements until the feet and limbs of Robert Phelps were exposed. A slipper and some of the clothing of the body was displaced and disturbed and one of the legs was punctured. Being

disturbed by persons who were sent to watch the tomb, he made his escape.

The grand jury of the county of Broome, in December following, indicted Dan S. Richards, William E. Taylor and Robert Richards, the case resting on circumstantial evidence. Three indictments were found, one for burglary in the third degree, one for injury to property, under section 647 of the Penal Code, and for injury to property under section 654 of Penal Code. The defendants demurred to all the indictments. The demurrers to the indictment for burglary and to the one under section 647 of the Code were overruled, and the demurrer to the indictment found under section 654 was allowed upon the ground that the offense came under section 647. The defendants were placed upon trial at the December term of the Court of Oyer and Terminer, 1885, on the indictment for burglary in the third degree. Robert Richards was discharged by the court, William E. Taylor was acquitted, and Dan S. Richards found guilty, and appealed to this court from the judgment of conviction.

*J. McGuire*, for the appellant.

*George B. Curtiss*, district attorney, for the people.

HARDIN, P. J.:

Section 498 of the Penal Code defines burglary in the third degree and declares "a person who either (1) with intent to commit a crime therein, breaks and enters a building or a room or any part of a building * * * is guilty of burglary in the third degree." The word "building" as used in this section is defined in section 504 of the Penal Code and declared to include a railway car, vessel, booth, tent, shop "or other erection or inclosure." The last section is new, and read in connection with section 498 gives to the latter section the same significance as though it read "building, or other erection or inclosure." We think no error was committed by the trial judge in holding that the defendant had entered a building, erection or inclosure, which was named in the 498th section defining burglary. *People* v. *McClosky* (5 Parker, 57), decided under the Revised Statutes, held that a room in the basement of the court-house at Utica occupied by the "Gulf Brewery" was a building or "store-

house" and that breaking into the room was a violation of the statute against burglary in the third degree. Since that case was decided the Revised Statutes in respect to burglary in the third degree have been superseded by the sections of the Penal Code from which we have quoted, and the words " or other erection or inclosure" introduced into the statute. (See 2 R. S., 669, § 17.) Under the Revised Statutes the breaking into " a building within the curtilage of a dwelling-house, but not forming a part thereof, or (2) any shop, store, booth, tent, warehouse or other building in which any goods, merchandise or valuable thing shall be kept for use, sale or deposit, with intent to steal therein, or to commit any felony," was declared " burglary in the third degree."

In the section of the Revised Statutes as to burglary in the first degree (2 R. S., 669, § 10) it was provided that if the breaking was " with intent to commit some crime " the offense was made out. It was not necessary to specify what kind of felony was intended in the indictment for burglary in the first degree. (*Mason* v. *The People*, 26 N. Y., 200.) But the statute language, found in the Penal Code, as to burglary in the third degree, as a comparison thereof with the Revised Statutes will show, is quite similar. If the entry into a building, " erection or inclosure" is with intent to commit a crime therein, the Penal Code is violated. It is not needful to a conviction that an intent to steal, or an intent to " commit any felony " shall be shown, provided the intent to commit any other crime is averred and established. (Penal Code, §§ 498 ; 499 ; 504.) A breaking may be made by opening a door tightly closed, whether locked or latched. (*Tickner* v. *The People*, 6 Hun, 657. Penal Code, § 501.) The evidence (fols. 106 and 355) shows the outer bronze gate was broken by defendant. If the defendant entered the vault, or " erection or inclosure " with intent to commit a crime therein, then he violated the statute against burglary in the third degree. Upon the trial, the question as to the intent with which he entered was submitted to the jury, and their verdict, in effect, finds that the intent was to " commit a crime." We think that question was proper for the jury upon all the evidence before them, and that we should not disturb their verdict upon that question. (Penal Code, §§ 3, 4, 5, 6, 647, 675.) The stone in front of the casket was broken ; the top of the casket was broken and also the

end of it, and the lead covering over the top of the casket was broken. The cement covering the body was broken, and the oakum and gum incasing the body was broken and the slipper and some of the clothing of the body was displaced and disturbed and one of the legs was punctured. Defendant testified he "took a bar to enable him to remove obstructions of the box, the cement and gum-mastic; it was with that intent I took it." When acts are prohibited by statute and the evidence clearly shows the defendant has done them, it is "wholly unnecessary for the jury to find that the defendant was actuated by express malice." It is enough to find that he was intentionally guilty of the acts. (*The People* v. *Reed*, 47 Barb., 243.)

If the jury found that the defendant broke in with intent to remove a "grave-stone," and that the tablet or stone in front of the coffin inscribed with the birth, date of death and name of the deceased was a "grave-stone" or "monument," then they found that he broke in with intent to commit an act or acts prohibited by section 8 of chapter 133 of the Laws of 1847, as well as by section 647 of the Penal Code.

In the indictment before us allegations were inserted to the effect that the vault or building, or erection or inclosure, broken into in the night-time by the defendant was "the property of and owned by William G. Phelps, Francis A. Phelps, and Lizzie S. Phelps and others, to the grand jurors unknown, who are the heirs-at-law of and legatees and devisees under the will of Robert S. Phelps, deceased, and said building, erection and inclosure being a part of the estate left by Robert S. Phelps, deceased," with an "intent maliciously, willfully, secretly and unlawfully to deface, disfigure, remove and destroy a grave-stone, marble tablet and monument, the same being works of art and useful and ornamental improvements in and upon the said Phelps vault, * * * being the property of and owned by the aforesaid William G. Phelps, Francis A. Phelps, Lizzie S. Phelps and others, to the said grand jury unknown, who are the heirs-at-law and legatees and devisees under the will of the said Robert S. Phelps, deceased, and being part of the estate left by said Robert S. Phelps, deceased." * * *

By the proofs and concessions upon the trial it appeared that the Spring Forest Cemetery was incorporated in 1853, under chapter 133 of the Laws of 1847. That the association, by its deed August

13, 1862, conveyed to Sherman D. Phelps (father of Robert S. Phelps), the cemetery lot whereon the lot was located " with the conditions and limitations mentioned in said legislative enactment." That Sherman D. Phelps did not convey or transfer said burial lot in his life-time. That the cemetery association " had the general management of the cemetery in which the vault was built." That Sherman D. Phelps took possession of the lot immediately upon receiving the deed from the cemetery association, and remained in possession until his death in November, 1873. In 1881, at the request of R. S. Phelps, the vault was constructed at a cost of $5,000, and the keys thereof delivered to Robert S. Phelps. It was conceded that the title to the burial lot acquired by S. D. Phelps, was " inalienable either by grant or devise, an interment having been made thereon during the life time of S. D. Phelps; upon his death the title to the lot vested in his heirs-at-law."

It was conceded by the district attorney upon the trial that the " three persons named in the indictment " are not heirs-at-law of Robert S. Phelps, and it appeared they are not heirs-at-law of Sherman D. Phelps. The defendant moved for his discharge on the ground of a " variance in the allegations in the ownership of the property, and the proof, * * * and because it appeared by the proof that the heirs-at-law of Robert S. Phelps are Harriet Phelps and eleven other persons named. The motion was denied and defendant excepted.

Then the district attorney moved to amend the indictment by " striking out therefrom the names of Francis A. Phelps, William G. Phelps and Lizzie S. Phelps, heirs-at-law and devisees of Robert S. Phelps, and insert in the place thereof the names of Harriet Phelps and eleven others as owners of the property described in the indictment." The defendant " objected to the allowance of such amendment to the indictment as not being within the power of the court to allow, * * * and the court has no power to change or alter an indictment. * * * in a material matter." The court overruled the objection and allowed the amendment to be made, and the same was made and an order to that effect was granted by the court. To that ruling the defendant excepted. There is no mention made of the order in the notice of appeal from the judgment. It may be assumed that the variance

between the allegations of the indictment, and the proof of ownership of the property, of the vault and contents would have been fatal under the law as it existed prior to the adoption of the Code of Criminal Procedure. (Bish. on Crim. Pro., vol. 2, §§ 137 and 138, p. 64; *Quinn* v. *The People*, 71 N. Y., 562; *Biggs* v. *The People*, 8 Barb., 551.) However, all forms of pleading in criminal cases existing prior to the Code of Criminal Procedure were abolished, and "the rules by which the sufficiency of pleadings is to be determined are prescribed" by the Code of Criminal Procedure, section 273. This brings us to the inquiry as to whether the variance is fatal, and the indictment non amendable under the Code of Criminal Procedure. In section 281 of the Code of Criminal Procedure it is declared that "when an offense involves the commission of, or an attempt to commit a private injury, * * * an erroneous allegation as to the person injured or intended to be injured, is not material." The injury referred to in the indictment was of property belonging to private persons, and in some sense the attempt was to commit "a private injury." But whether the new provision of law found in section 281 is applicable to and controlling of the question here presented need not be conclusively determined, but effect may be given to the section when read in connection with section 293 relating to amendments, and both sections interpreted together. By the latter section power is given to allow amendments of indictments. We have already held that section to be valid and constitutional (*People* v. *Johnson*, 4 N. Y., Crim. Rep., 591), and our decision was affirmed by the Court of Appeals in the January Term. In that case, the amendment changed the name of the female seduced under promise of marriage, and also the name of the town in which the crime was alleged to have been committed. By section 293 power is given to the court to allow certain amendments to obviate the difficulties presented by a "variance between the allegation therein and the proof," viz: (1) "In respect to time, or (2) in the name or description of any place, *person*, or thing." By reference to the indictment it is seen that the allegation therein referred to the "thing" or property affected by the crime. In describing it, the pleader averred that it belonged to "the heirs and legatees" of Robert S. Phelps. By way of a further description of it, the pleader stated that it was owned by or belonged to the

persons named, who were the heirs-at-law of Robert S. Phelps. In respect to the ownership, the averment that it belonged to the heirs of Robert S. Phelps was correct, and accords with the proof. But the averment that the ownership was in the three persons named was erroneous. In that respect, the descriptive fact of the property or "thing," which descriptive averment tended to identify the property or "thing" was at variance with the proof. The "thing" would have been more accurately described and in accordance with the proof of ownership if the averment had been that the ownership of the property or "thing" was in "the heirs-at-law of Robert S. Phelps," who were the twelve names that appear as such, and in the amendment allowed. Again, "the persons" whom the amendment undertook to describe "as heirs at law and legatees of," etc., were described by a further addition of three names, whereas it turns out that the attempt to fully describe "the heirs at law of R. S. Phelps," was erroneous, in that the heirs did not bear the three names given, but "the heirs at law" bore twelve other names. The description of "the person" of the heirs at law was defective, erroneous, and the amendment makes an averment which corrects the description of "the person" or "persons" of the heirs-at-law of said Phelps.

In *The People* v. *Johnson (supra)* the "place" named in the indictment was stricken out and the amendment substituted "Champion" for "Wilna," and for a change of person seduced the name in the indictment of "Mary Olyphant" was changed by the amendment to "Mary Olivert." It may be further observed that in the allegations of ownership of the "thing" or property, coupled with the names of the three persons named are the words, viz.: "*And others to the grand jurors unknown who are the heirs-at-law of*, and legatees and devisees under the will of Robert S. Phelps, deceased." The word "others," if applied to the persons, who, by the proofs, appear to be the heirs-at-law of Robert S. Phelps, may be regarded as an indefinite and imperfect description of "the heirs-at-law of Robert S. Phelps," and a meagre description of the "person" or "persons," and the amendment served to make definite and perfect the description of the "others" who were the heirs-at-law of Phelps. We are constrained to declare the amendment allowed only perfected "*the name or description,*" * * *

of the person or thing." The court did not exceed its power in allowing the amendment and disregarding the variance between the original allegations of the indictment and the proof. (Code of Criminal Procedure, §§ 281, 293, 294. *People* v. *Johnson, supra.*)

Defendant put in evidence a judgment-roll filed upon the decision of a demurrer interposed to an indictment against the defendant, charging him with " the crime of unlawful and willful injury to and destruction of real and personal property committed " as alleged in that indictment. To that indictment a demurrer had been interposed and sustained and defendant discharged. The grounds of the demurrer were viz: First, for joining " in one count separate and different offenses, that is to say, a charge of the commission of a felony, with a charge of the commission of a misdemeanor; that an injury to a tomb, catacomb or vault, or any part *of the same is a misdemeanor*, an injury to real or personal property, when the value of the same is twenty-five dollars, and where the punishment is not specifically prescribed by statute is felony." Second, that the facts stated in the indictment do not constitute a crime for wilfully injuring and destroying the personal property of another when the punishment is not specifically prescribed by statute. Third, that the personal property does not belong to the heirs-at-law or devisees of Robert S. Phelps, deceased.

There was no demurrer upon the ground " that the facts stated do not constitute a crime," which ground might have been taken. (Code of Crim. Pro., § 323,) It is nowhere made to appear by the demurrer, decision or judgment-roll, that the court held that the facts stated in the indictment did not constitute a crime. Besides, the crime alleged is not the crime alleged in the indictment for burglary now before us. The section which declares the effect of a decision upon a demurrer only declares such a decision " is a bar to another prosecution *for the same offense.*" (Code of Crim. Pro., § 327.)

" The acquittal or conviction on an indictment, in order to be a good defense to a subsequent indictment, *must be for the same* identical offense charged in the second indictment." (1 Russ. on Crime, 836 ; 4 Blk. Com., 336 ; opinion of ALLEN, J., in *People* v. *McClosky*, 5 Park. Crim. R., 59.) It is now provided by section

506 of the Penal Code, viz.: "A person who, having entered a building under such circumstances as to constitute burglary in any degree, commits any crime therein, is punishable therefor, as well as for the burglary; and may be prosecuted for each crime separately, or in the same indictment." There is nothing in the judgment record introduced to show that the court held that the defendant had not committed or did not intend to commit a crime within the building entered. In the grounds of demurrer the defendant asserted that the facts stated, viz.: "That an injury to a tomb, catacomb, or vault, or any part of the same is a misdemeanor."

We are of the opinion that the court did not err in refusing to hold that the "judgment is a bar to any proof of the commission of the acts * * * charged in the indictment now upon trial," or in refusing to strike out "all the testimony which shows the commission of the acts charged." We are of the opinion that defendant Richards had no express or implied authority from any person entitled to give the same to break into the vault or commit the acts charged. Taylor, the father and administrator of Mrs. Phelps, had no title to the vault, or to the stone monument, slab or tablet in front of the coffin of Robert S. Phelps, deceased. The acts of the defendant were unauthorized and unlawful. (*Reg.* v. *Sharpe*, 40 Eng. Law and Eq., 581 ; *Snyder* v. *Snyder*, 60 How. Pr., 370.) Several rulings were had and exceptions taken during the trial to which reference in this opinion has not been made, but an examination has not satisfied us that any error was committed which should lead to a reversal, as section 542 of the Code of Criminal Procedure requires the court to disregard "technical errors or defects, or exceptions which do not affect the substantial rights of the parties." (*Schrumpf* v. *People*, 14 Hun, 10; *People* v. *Gonzales*, 35 N. Y., 49; *Stokes* v. *People*, 53 id., 165; *Coleman* v. *The People*, 58 id., 555; *People* v. *Burns*, 33 Hun, 300; *Cox* v. *The People*, 80 N. Y., 500.)

If the foregoing views are approved the conviction and judgment should be affirmed, and the proceedings remitted to the Oyer and Terminer of Broome county, with directions to enforce the same.

BOARDMAN, J., concurred; FOLLETT, J., not voting.

Conviction, order and judgment affirmed.